UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA PEREA CASEY and FRANK CASEY,

    Plaintiffs,

    v.                                                                CIV. NO. 04-1157 ACT/DJS

WEST LAS VEGAS INDEPENDENT SCHOOL
DISTRICT,   et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment based on Qualified Immunity filed September 7, 2005 [Docket No. 26] and Defendants' Motion for Summary Judgment based on 42 U.S.C. § 2000(f) (sic) filed November 7, 2005 [Docket No. 35]. Defendants seek summary judgment on Plaintiff, Barbara Perea Casey's claims alleging First Amendment retaliation, violation of her right to Equal Protection and sexual discrimination in violation of Title VII. Upon review of the pleadings and being otherwise advised, the Court grants in part Defendants' Motion for Summary Judgment based on Qualified Immunity and enters summary judgment in favor of Defendants on Plaintiff's equal protection claim. In addition, the Court grants Defendants' Motion for Summary Judgment based on 42 U.S.C. § 2000(f) (sic) and enters summary judgment in favor of the Defendants on Plaintiff's Title VII sexual discrimination claims.

**Background**.

Plaintiffs filed a Complaint on October 13, 2004. [Docket No. 1.] The Motions at issue concern only Barbara Perea Casey ("Plaintiff").

The following facts are undisputed.[1]  Plaintiff was Superintendent of the West Las Vegas School District from mid-January 2002 until April 10, 2003.  She was demoted to the position of Associate Superintendent on April 10, 2003.  On May 8, 2003, Defendants voted not to renew her contract of employment.

During the period when she was Superintendent, Plaintiff also held the position of chief executive officer of Defendant's Head Start program.  Head Start is a federally funded program providing early childhood education, meals, family services and health care to low income children ages 3-5 throughout the United States.  Each community's Head Start program is administered through a local grantee organization that receives the federal funds, administers the program and accounts for the use of those funds.  At all times material to this case, Defendant West Las Vegas Independent School District ("WLVISD") was the grantee responsible for administering the Head Start program serving low income children throughout Las Vegas and San Miguel County, New Mexico.  Prior to the 2001-2002 school year, the federal government had determined that this program had 61 major deficiencies.

In June of 2002, at Plaintiff's recommendation, Defendants hired Jacqueline Padilla ("Padilla") to be WLVISD's new Head Start Director.   As a result of Plaintiff's and Padilla's efforts by the winter of 2002-2003, the federal oversight agency determined that the Head Start program was in substantial compliance with federal requirements.

In the winter of 2003, Plaintiff was informed by Padilla that Padilla and her staff had begun

---

[1]Defendants assert that Plaintiff's affidavit attached to her responses to Defendants' Motions for summary judgment are inconsistent with her deposition testimony and thus should be disregarded by the Court. *Burns v. Board of County Com'rs of Jackson County*, 330 F.3d 1275 (10th Cir. 2003). The Court does not decide this issue but rather relies on facts that are accepted as true by all parties.

to uncover evidence showing as many as 50% of the families enrolled in WLVISD's Head Start program may have had incomes that were too high to be in the program or that there were other irregularities regarding applications by participants in the program. Plaintiff then informed Defendant School Board President Walter Adams ("Adams") of this information. Adams also received an e-mail from Padilla regarding the enrollment issue on April 4, 2003. Padilla informed the school board of the enrollment issue on April 10, 2003. Before she was removed as Superintendent, Plaintiff instructed Padilla to inform the Federal Head Start Regional Office in Dallas about her findings, which Padilla did. In early-mid April 2003, Plaintiff informed Defendants that the alleged illegal Head Start enrollments had been reported to the federal agency which oversaw the program.

As a result of its investigation, the federal government ordered the program to change its practices and further ordered WLVSD to pay back more than $500,000 because of abuse and mismanagement of federal funds. This order is on appeal. The FBI and the United States Attorney are investigating Defendants' involvement in the Head Start enrollments to determine whether they should be criminally charged.

In addition to the Head Start enrollment issues, Plaintiff advised Defendants during the 2002-03 school year they were violating the New Mexico Open Meetings Act, NMSA 1978, §§ 15-10-1, *et seq*. because they were discussing issues in executive session that were not on the agenda. On or about March 17, 2003, Plaintiff wrote to the New Mexico Attorney General concerning Defendants' alleged violations of the Opening Meetings Act.[2] On October 9, 2003, the Attorney General issued

---

[2]There is a question of fact as to when the WLVISD, and specifically Adams, became aware of the complaint. Plaintiff wrote a letter to the Attorney General on March 17, 2003. There is a letter in the record from the Attorney General to Adams dated March 25, 2003. However, Defendants assert that it undisputed, based on Plaintiff's testimony, that she did not tell anyone on the board about her complaint to the Attorney General's office. As the Court finds that Plaintiff's claim of First Amendment retaliation will go forward, this will be an issue that can be addressed at trial.

an opinion finding that Defendants had violated the Open Meetings Act.

Also, during the 2002-2003 school year, Plaintiff advised the Board about a number of practices that she believed violated other state or federal laws. For example, Plaintiff believed that payments to the individual Defendants to attend Board meetings violated state law which prohibits school board members from receiving any compensation for their service.

Defendants paid Plaintiff less than her predecessor and her successor. Defendants never gave any reason for demoting and terminating Plaintiff. During April-May 2003, Defendants stopped communicating and working with Plaintiff and no longer provided information to her.

**Summary Judgment Based on Qualified Immunity.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, we view the evidence in the light most favorable to the nonmovant. *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001).

When public officials assert qualified immunity, the burden shifts to the plaintiff to show that defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The analysis involves a two part inquiry: whether Plaintiff has asserted a violation of a constitutional right, and, if so, that the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Albright v. Rodriquez,* 51 F.3d 1531, 1534-35 (10th Cir. 1995).

**First Amendment Claim-Retaliation**.

Plaintiff contends that the Defendants violated her First Amendment right to freedom of speech. Defendants assert in their Motion they are entitled to qualified immunity on this claim.

A public employer cannot retaliate against an employee for exercising her constitutionally protected right of free speech. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). The Tenth Circuit employs the *Pickering* test to evaluate whether the action of a public employer impermissibly infringes on an employee's free speech rights. *Pickering v. Board of Education,* 391 U.S. 563 (1968). As explained in *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999):

> Our initial inquiry under [the *Pickering*] test is to determine whether the public employee's speech at issue touches upon matters of public concern. *Connick*, 461 U.S. at 146, 103 S. Ct. 1684. If this is so, the court then must balance the interest of the public employee in making the statement against the government-employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 491 U.S. at 568, 88 S. Ct. 1731.
>
> If such balancing favors the plaintiff, he next must show that the constitutionally protected expression was a motivating factor in the adverse employment decision. *Mount Health City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). Last, if the plaintiff satisfied the above elements, the burden shifts to the employer to show by a preponderance of the evidence that it would have made the same employment decision "even in the absence of the protected conduct." *Id*.

The first two questions are questions of law, while the latter two are questions of fact. *Dill,* 155 F.3d at 1201.

To determine whether speech touches on a matter of public concern, the Court determines, as a matter of law, whether it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 146 (1983). This requires an analysis of the content, form and context of a given statement, as revealed by the record as a whole. *Id*. at 147-48. "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [the Defendants], in terms of content, clearly concern matters of public import."

5

*Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988).

Plaintiff is alleging three instances of protected speech– alleged illegal enrollments in the Head Start program, violations of the Open Meetings Act[3] and violations of state and federal law including state law which prohibits the Board from receiving any compensation for their service. These allegations clearly "concern information in which the public would definitely be interested." *Id*. at 796. Thus, the Court finds that the speech at issue touches on matters of public concern. As the Court has found that Plaintiff's speech involves a matter a public concern, the Court must "balance the employee's interest in commenting upon matters of public concern against the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Dill*, 155 F.3d at 1201. "Speech is protected if the employee's interest outweighs the interest of the employer." *Id*. Factors to be considered include:

> the manner, time and place of the employee's expression...the context in which the dispute arose...[and] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impeded the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Baker v. City of Del City*, 215 F.3d at 1139.

The Court notes that the Defendants have a heavier burden when the speech constitutes whistle blowing.

> When balancing the rights of the employee against those of the employer, an employee's First Amendment interest is entitled to greater weight when he is acting as a whistle blower in exposing government corruption. (citation omitted) Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly

---

[3]If it is proven at trial that no one on the Board was aware of Plaintiff filing a complaint with the Attorney General until after her demotion, this speech would not support Plaintiff's First Amendment claim. However, Plaintiff still would have a First Amendment claim based on other protected "speech" concerning the Head Start program and the issue of compensation to the Board.

concerns vital public interests.

*Conaway*, 853 F.2d at 797.

In this matter Plaintiff's speech can be described as whistle blowing. Her speech involved allegations regarding impropriety on the part of the Board members.

In considering the factors described above, Defendants have failed to carry their burden. Importantly, Defendants do not offer any evidence that Plaintiff's speech disrupted any legitimate or lawful conduct by the Defendants or the school district. As discussed above, Plaintiff's statements did not concern routine administrative matters subject to Board control. In addition, the fact that Plaintiff chose to make some of her statements in executive session and not in public does not deprive the speech of First Amendment protection. *Conaway*, 853 F.2d at 797 ("The fact that Conaway chose a private forum, rather than public, to express his concerns, does not remove it from First amendment protection. [Citations omitted]."). Moreover, ultimately Plaintiff reported the alleged illegal Head Start enrollments to the federal agency that administers the program and the alleged violations of the Open Meetings Act to the New Mexico Attorney General. The "time, manner and place" of Plaintiff's speech appear appropriate, and the facts to not support any inference that Plaintiff's speech was carried out for the purpose of disrupting school business.

Defendants assert it was disruptive for them to hear Plaintiff believed receiving per diem was illegal and that it also was disruptive to have to respond to the Attorney General's inquiries concerning the Open Meetings Act. There is no evidence of disruption and even if it was disruptive such disruptions are appropriate. *Baker*, 215 F.3d at 1139-40. Moreover, the Attorney General found that Defendants had indeed violated the New Mexico Open Meetings Act.

"It would be anomalous to hold that because the employee's whistle blowing might

7

jeopardize the harmony of the office or tarnish the integrity of the department, the law will not allow him to speak out on his perception of potential improprieties or department corruption. (citation omitted.)"

*Conaway*, 853 F.2d 797-8.

The Court would also note that the Defendants did not demonstrate that Plaintiff's speech affected her competence to perform her duties as school superintendent. Plaintiff held a position of authority and responsibility and thus her speech could have caused disruption where speech by one in a lesser position might not cause disruption.

In addressing the balancing factors in the second part of the *Pickering* test the Court finds that Plaintiff's speech was constitutionally protected. Plaintiff's First Amendment rights were clearly established and Defendants have not demonstrated that Plaintiff's speech was disruptive.. *Conaway*, 853 F.2d at 796; *Dill*, 155 F.3d at 1201; and *Barker*, 215 F.3d at 1139. The Court, therefore denies Defendant's Motion as to the First Amendment claim and that claim will proceed to trial.

**Equal Protection**.

Plaintiff also asserts a claim under the "class of one" Equal Protection Clause of the Fourteenth Amendment. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ( prohibiting disparate treatment that is irrational, arbitrary, capricious, without rational basis and lacking legitimate government purpose). The disparate comparative element distinguishes the Equal Protection Clause from the Due Process Clause. *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004) citing *Ross v. Moffitt,* 417 U.S. 600, 619 (1974) ("'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State between classes

of individuals whose situations are arguably indistinguishable.")    Defendants assert they are entitled to qualified immunity because the law was not clearly established during the relevant time, 2003-2003. Defendants' assertion is incorrect. *Bartell v. Aurora Public Schools* 263 F.3d 1143, 1148-49 (10th Cir. 2001) (holding that equal protection affords protection to an individual injured by intentional or purposeful discrimination without identification of a class). However, Plaintiff cannot prevail, as a matter of law, because she cannot demonstrate violation of a constitutional right. *Sieger*, 500 U.S. at 232.

To bring a successful equal protection clause claim based on the class-of-one theory, Plaintiff must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564. A similarly situated employee is one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (discussing one way to show pretext is to show one was treated differently from someone similarly situated). Plaintiff refers to a principal, a cook and two unidentified employees as similarly situated employees.[4] (Plaintiff's Material Fact 19, Response, p. 10).    These employees are not similarly situated. *Payne v. Huntington Union Free Sch. Dist*. 219 F. Supp. 2d 273 (E.D.N.Y. 2002). The employees identified by Plaintiff do not report to the Board nor has Plaintiff demonstrated they are "subject to the same standards governing performance evaluation and discipline." *Green*, 430 F.3d at 1194. As Plaintiff offers no evidence to establish a genuine issue of material fact that she was similarly situated to these employees,  Plaintiff cannot prevail and Defendants are entitled to qualified immunity on this claim. Therefore Defendants' Motion will be granted as to the Equal Protection

---

[4]The Court notes that Plaintiff did not file a Fed. R. Civ. P. 56(f) affidavit.

claim.

**Title VII.**

In her Complaint, Plaintiff alleges sexual discrimination in violation of Title VII.  Defendants seek summary judgment because Plaintiff is not an employee for purposes of Title VII, 42 U.S.C. § 2000e(f).  Title VII of the Civil Rights Act of 1964 provides that:

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.  The exemptions set forth in the preceding...shall not include employees subject to the civil service laws of a state government, governmental agency or political subdivision...

42 U.S.C. § 2000e(f).

The "personal staff" exemption is narrowly construed.  *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982).  The exemption is intended "to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir. 1981).  The Tenth Circuit has held that the following factors should be considered in determining if the personal staff exception applies:

> (1)  whether the elected officials has plenary powers of appointment and removal,
> (2)  whether the person in the position at issue is personally accountable to only that elected official,
> (3)  whether the person in the position at issue represents the elected official in the eyes of the public,
> (4)  whether the elected official exercises a considerable amount of control over the position,
> (5) the level of the position within the organizations chain of command, and
> (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Nichols v. Hurley,* 921 F.2d 1101, 1110 (10th Cir. 1990).[5]

In applying these factors, it is clear that Plaintiff is not an employee under Title VII. School board members are elected officials § 22-5-1.1 NMSA. Pursuant to statute, the school board employs a local superintendent for the school district. § 22-5-4(B) NMSA. As the top official of the school district, the superintendent represents the school district in the eyes of the public and is accountable only to the school board for her actions. The actual intimacy of the relationship is apparent from the advice and recommendations Plaintiff gave to the members of the school board, often in private executive sessions. Plaintiff acts as "an immediate adviser with respect to the exercise of the constitutional or legal powers of the office."

The school board is responsible for developing educational policies for the school district. § 22-5-4 NMSA. The superintendent is the chief executive officer of the school district and is required to carry out these policies and perform other duties as required by the school board. § 22-5-14 NMSA. Thus, Plaintiff is considered to be on the "personal staff" of the school board because "the function of an elected official's personal staff could be to implement his policies in the manner he desires, rather than help him formulate those policies." *Nichols*, 921 F.2d at 1113. Moreover, the superintendent has the authority to "employ, fix the salaries of, assign, terminate or discharge all employees of the school district." § 22-5-14B(3) NMSA. The superintendent acts on the "policy making " level by giving advice and recommendations to the school board.

Plaintiff also asserts she is an employee under Title VII based upon the Government Employee Rights Act of 1991 (the "GERA"). The GERA is the"last step in the sequence of broadening Title VII

---

[5]*Nichols* examines the definition of employee under the Fair Labor Standards Act which is essentially identical to that under Title VII. The court looked to the legislative history of Title VII and cases interpreting the personal staff exception under Title VII for guidance.

11

to provide protections...to classes of employees who were previously unprotected – specifically, previously exempt state employees." *Board of County Commissioners, Fremont County, Colorado v. United States Equal Employment Opportunity Commission*, 405 F.3d 840, 849 (10th Cir. 2005). Specifically, the GERA provides that the rights, protections, and remedies apply to individuals chosen or appointed, by a person elected to public office in any State or political subdivision of any state by the qualified voters thereof to serve the elected officials on the policymaking level. *Id.*

However, under the regulations promulgated pursuant to the GERA, Plaintiff cannot prevail in this lawsuit. Regulations pursuant to the GERA provide that an individual may file a complaint alleging a violation with the EEOC within 180 days after the occurrence of the alleged violation. 29 C.F.R. § 1603.102. The regulations further state that "[a]ny party aggrieved by a final order [issued by the EEOC] may obtain a review of such order under chapter 158 of Title 28." 29 C.F.R. § 1603.306. Chapter 158 of Title 28 is the Administrative Orders Review Act. This Act confers jurisdiction in the appropriate court of appeals. Thus, the Tenth Circuit Court of Appeals, not the district court, has jurisdiction to review a final order of the EEOC.[6] *Board of County Commissioners Fremont County, Colorado,* 405 F.3d at 851. For the foregoing reasons, the Court finds that summary judgment will be granted to the Defendants on Plaintiff's Title VII claim.

Finally, Plaintiff requests to amend her Complaint to "specifically plead a violation of 42 U.S.C. §2000e-16c and to plead a violation of the gender discrimination prohibitions of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983." Plaintiffs' Response to Defendants' Motion for Summary Judgment Based on 42 U.S.C. Section 2000e(f), p. 5. Such a request may be

---

[6]Moreover there does not appear to be a final order from the EEOC in this matter. The Right to Sue letter issued by the EEOC was issued at Plaintiff's request and specifically states that the EEOC has not made a determination on the merits of Plaintiff's claims. Plaintiff's Response, Exh. 1.

12

an exercise in futility in view of the Court's ruling on Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims. In any event, Plaintiff did not attach a proposed amended complaint. The Court's local rules contemplates a separate motion and requires that the proposed amendment accompany the motion to amend. D.N.M.LR-Civ. 15. Thus, Plaintiff's request will be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment based on Qualified Immunity is granted in part and denied in part and that Plaintiff's Equal Protection claim is dismissed with prejudice; and Plaintiff's First Amendment claim will proceed to trial;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment based on 42 U.S.C. § 2000(f) (sic) is granted and Plaintiff's Title VII claim is dismissed with prejudice; and

**FINALLY, IT IS ORDERED** that Plaintiff's request to amend her Complaint is denied.

*[signature]*

**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**